# Original

JOHN C. MANLY, Esq. (State Bar No. 149080)
VINCE W. FINALDI, Esq. (State Bar No. 238279)
ALEX CUNNY (State Bar No. 291567)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

GLORIA ALLRED, Esq. (State Bar No. 65033)
NATHAN GOLDBERG, Esq. (State Bar No. 61292)
**ALLRED MAROKO & GOLDBERG**
6300 Wilshire Blvd #1500
Los Angeles, CA 90048
(323) 653-6530

Attorneys of Record for Plaintiff, JANE PCNE DOE, an
individual; and JOHN PCNM DOE, an individual.

**FILED**
Superior Court Of California
County Of Los Angeles

JUN 3 0 2017

Sherri R. Carter, Executive Officer/Clerk
By: _____, Deputy
Glorietta Robinson

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

**BY FAX**

BC 6 6 7 0 5 3

| | |
|---|---|
| JANE PCNE DOE, an individual; and JOHN PCNM DOE, an individual. | Case No.: _____ |
| Plaintiffs, | Judge: _____ |
| | Department: _____ |
| v. | **COMPLAINT FOR DAMAGES FOR:** |
| USA GYMNASTICS, a Business Entity of form unknown; UNITED STATES OLYMPIC COMMITTEE, a Business Entity of form unknown; and DOES 3 through 500. | 1) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |
| | 2) **UNFAIR BUSINESS PRACTICES (*CAL. BUS. & PROF. CODE* §17200)** |
| Defendants. | 3) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;** |
| | 4) **NEGLIGENCE;** |
| | 5) **BREACH OF FIDUCIARY DUTY;** |
| | 6) **CONSTRUCTIVE FRAUD;** |
| | **DEMAND FOR JURY TRIAL** |

**COMES NOW**, Plaintiffs JANE PCNE DOE and JOHN PCNM DOE (hereinafter collectively referred to as the "Plaintiffs"), who complain and allege as follows:

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

FSC: 1 2 / 1 4 / 2018   TRIAL: 1 2 / 3 1 / 2018   OSC: 0 6 / 3 0 / 2020

CIT/CASE:
LEA'D/DEF#: BC667053

RECEIPT #: CH505376049
DATE PAID: 06/30/17
PAYMENT: $435.00
RECEIVED:
CHECK
CASH:
CHANGE:
CARD:
$435.00
$0.00
$0.00
$0.00
06/30/17 02:15 PM
310

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

## GENERAL ALLEGATIONS AS TO THE PARTIES

1.     The Plaintiffs bring the instant action in order to recover damages they suffered as a result of the orchestrated scheme by Defendants USA GYMNASTICS (hereinafter, "USAG") and Defendant UNITED STATES OLYMPIC COMMITTEE ("USOC"), to suppress and conceal their knowledge of known sexual abusers in the USAG program, including Dr. Larry Nassar (hereinafter "NASSAR"), failing to protect the Plaintiffs' daughter, and permitting the Plaintiffs' daughter to be sexually abuse and assaulted, as a child, by NASSAR, under the guise of legitimate medical treatment. As entities responsible for the safety, health, and welfare of the Plaintiffs' daughter (who was an elite, international gymnast), the Defendants USOC, USAG and DOES 1 through 500 (collectively referred to as "Defendants") had a duty to inform the Plaintiffs about individuals who posed a danger to the Plaintiffs' child while in Defendants' care, as Defendants stood *in loco parentis* with the Plaintiffs, as well as their daughter. Instead of upholding this duty to inform the Plaintiffs of known dangers posed to their daughter and to protect the Plaintiffs' daughter from these dangers, including sexual abusers at USAG, and under USOC's watch, like NASSAR, the Defendants failed to protect the Plaintiffs' child, withheld information pertaining to Defendants' knowledge of NASSAR's unfitness and sexually abusive propensities as a physician, and permitted the Plaintiffs' child to be subjected to sexual abuse by NASSAR.

2.     The doe pseudonyms of JANE PCNE DOE and JOHN PCNM DOE are not the true and correct names of the Plaintiffs. The Plaintiffs are proceeding under these doe pseudonyms in order to protect their identities and privacy, as is their right under California case law due to the sensitive nature of this case. Furthermore, these doe pseudonyms are utilized to protect their daughter, a victim of childhood sexual abuse, and her privacy interests, by way of association with her parents' true and correct names.

### THE PLAINTIFFS JANE PCNE DOE AND JOHN PCNM DOE

3.     The Plaintiff JANE PCNE DOE is an adult female who currently resides in the State of California, in the County of Los Angeles. The Plaintiff JANE PCNE DOE is the mother of a minor gymnast (at the time) who was sexually abused by NASSAR, while competing in National and International Competitions, including but not limited to competitions in California,

the Karolyi Ranch in Huntsville, Texas (and other locations across the United States and internationally) that were hosted, sanctioned, supervised, and/or endorsed by the Defendants. During these events, the Defendants took care, custody and control of the Plaintiffs' daughter, stood *in loco parentis* with both the Plaintiffs and their daughter, and Defendants had a duty to protect the Plaintiffs' daughter and inform the Plaintiffs of known dangers posed to their daughter.

4.     The Plaintiff JOHN PCNEM DOE is an adult male who currently resides in the State of California, in the County of Los Angeles. The Plaintiff JOHN PCNM DOE is the father of a minor gymnast (at the time) who was sexually abused by NASSAR, while competing in National and International Competitions, including but not limited to competitions in California, the Karolyi Ranch, (and other locations nationally and internationally) that were hosted, sanctioned, supervised, and/or endorsed by the Defendants. During these events, the Defendants took care, custody and control of the Plaintiffs' daughter, stood *in loco parentis* with both the Plaintiffs and their daughter, and Defendants had a duty to protect the Plaintiffs' daughter and inform the Plaintiffs of known dangers posed to their daughter.

5.     The Plaintiffs' daughter was an elite level gymnast who competed in National and International competitions. These National and International competitions occurred in places including but not limited to California, the Karolyi Ranch in Huntsville, Texas and other locations across the United States and internationally. During many of these competitions, the Plaintiffs' daughter was subjected to sexual harassment, abuse and molestation by NASSAR, including but not limited to competitions and trainings that occurred in California, at the Karolyi Ranch in Huntsville, Texas and other locations across the United States and internationally. The Plaintiffs' child was sexually abused on numerous occasions and at numerous locations (including but not limited to: California, the Karolyi Ranch in Huntsville, Texas and other locations across the United States and Internationally), in or around 2009 through in or around 2013. This sexual abuse of the Plaintiffs' daughter occurred at events where Defendants USAG and USOC were responsible to supervise the Plaintiffs' daughter and to provide for her safety.

///

///

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

6.     It was not until in or around mid-July of 2015 that the Plaintiffs became aware, for the first time, that their daughter may have been the victim of sexual abuse, at the hands of NASSAR.

### DR. LARRY NASSAR (NON-PARTY)

7.     NASSAR, the Perpetrator, at all times mentioned herein was and is an adult male individual, who Plaintiffs are informed and believe lived in the State of Michigan during the period of time during which the sexual abuse, harassment, and molestation of the Plaintiffs' daughter alleged herein took place and is currently a citizen of the State of Michigan. Plaintiffs are informed and believe that the NASSAR was accepted onto the staff of USAG as a trainer in 1986 and then as the National Medical Director and the National Team Physician for the women's gymnastics team in 1996. NASSAR was also responsible for coordinating the care for USAG and for participants and members at every national and international competition, and would routinely travel to National and International competitions. NASSAR continued to function in this capacity at USAG until in or around the middle of 2016. At all times herein alleged, NASSAR was an employee, agent, and/or servant of Defendants USAG, USOC and DOES 1 through 500, and/or was under their complete control and/or active supervision.

8.     NASSAR was retained by USAG as an Osteopathic Physician and certified athletic trainer to provide care, treatment, and athletic training to the USAG and its participants, many of which were minors while in his care. It was through this position of trust and confidence, that the NASSAR exploited the Plaintiffs' daughter, in perpetrating his sexual abuse, molestation and harassment upon the Plaintiffs' daughter. All of the sexually abusive and harassing conduct alleged herein was done for the NASSAR's sexual gratification and was based upon the gender of the Plaintiffs' daughter.

9.     It is on information and reasonable belief that NASSAR, using his apparent authority and position within USAG and USOC over the minor participants in his charge, that the NASSAR sexually abused, molested, and harassed numerous gymnasts, over the nearly 30 years in which NASSAR has been affiliated with USAG and USOC.

///

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**DEFENDANT USA GYMNASTICS**

10. Defendant USAG, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Indiana. Plaintiffs are informed and believe USAG was incorporated in the state of Texas and/or Arizona. USAG is the national governing body for gymnastics in the United States, and selects and trains the United States gymnastics teams for the Olympics and World Championships, promotes and develops gymnastics locally and nationally, and serves as a resource center for members, clubs, fans and gymnasts throughout the United States. Defendant USAG has more than 174,000 athletes and professional members, more than 148,000 athletes registered in competitive programs, as well as more than 25,000 professional, instructor and club members. Approximately 4,000 competitions and events throughout the United States are sanctioned annually by USAG. USAG was the primary entity owning, operating and controlling the activities and behavior of its employee agents, including, but not limited to NASSAR. USAG is also the entity that selects gymnasts for the US National and Olympic Teams.

11. USAG purposely conducts substantial educational business activities in the State of California, with regional affiliates in Northern California, Central California, and Southern California. USAG currently sponsors and has scheduled over 75 competitions, meets, and/or invitationals throughout the entire state of California. USAG has numerous athletes and professional members, professional, instructor and club members conducting substantial activity and purposefully availing itself of the laws and protections of California. The sexual abuse, harassment, and molestation alleged herein took place multiple times, in many locations, including locations in California, where USAG was the primary entity owning, operating and controlling the activities and behavior of its employee agents, including, but not limited to NASSAR.

12. As stated on its website through its Code of Ethical Conduct, "…Members of [USAG] are expected to promote a safe environment for participants, coaches, officials, volunteers and staff in all gymnastics disciplines, which includes an environment free from sexual misconduct. It is inconsistent with this obligation for any Member to: 1. Solicit or engage in sexual relations with any minor. 2. Engage in any behavior that utilizes the influence of a professional

Member's position as coach, judge, official or administrator to encourage sexual relations with an athlete or participant. 3. Engage in sexual harassment by making unwelcome advances, requests for sexual favors or other verbal or physical conduct of a sexual nature where such conduct creates an intimidating, hostile or offensive environment." However, USAG's policies and procedures then provide that, "Professional Members of [USAG] must protect the integrity of the sport and the interests of the athletes they serve by avoiding sexual relationships with athletes **except where the capacity and quality of the athlete's consent to enter that relationship is beyond question**." [Emphasis Added]. In enforcing this Code of Ethical Conduct, the published policies and procedures provide, "Compliance with this Code depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peers, and, when necessary, upon enforcement through disciplinary action....Any Member ('Complainant') who believes that another Member of [USAG] has failed to meet such Member's obligations under this Code is, under all but the most egregious circumstances, encouraged to first address that concern directly to that Member."

13. Under USAG's policies and procedures for reporting abuse, it provides that, "[USAG] will follow applicable law in reporting abusive situations to the proper authorities. If, in [USAG]'[s] reasonable and good faith judgment, reporting to the proper authorities is necessary to protect a person from the possibility of further abuse, it may make such report even if not compelled by law to do so." Further, the policies and procedures for "Reporting Suspected Abuse" at USAG provide that "[a]ny person who reasonably and in good faith believes a member of [USAG] has abused another person, whether physical or sexual, such person may notify the [USAG] National Office pursuant to Articles 9 and/or 10 of the [USAG] Bylaws."

14. Under California *Penal Code* § 11165.7, USAG is an organization whose employees, agents, and/or servants are legally "mandated reporters", considering that USAG is a youth recreational program and USAG's employees' duties require direct contact and supervision of children.

15. USAG receives millions of dollars in private donations and corporate financial support, on a yearly basis, according to its publicly available Form-990's. It is on this basis, under

**COMPLAINT FOR DAMAGES**

information and therefore belief, that USAG ignored and/or actively concealed the abuse that was being perpetrated by NASSAR, and other employees/agents of its organization, such that USAG would not be subjected to public scrutiny, administrative, civil and/or criminal investigation and could maintain a false façade of high moral repute, and could maintain and grow this financial support for its programs. This attempt to conceal and/or ignore the abuse being perpetrated under its control and supervision, was done at the expense of minor athletes and participants, including the Plaintiffs and their minor child at the time.

### DEFENDANT UNITED STATES OLYMPIC COMMITTEE

16.     Defendant USOC, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Colorado and is headquartered in Colorado Springs, Colorado. The USOC is a federally chartered nonprofit corporation, which was reorganized by the Ted Stevens Amateur Sports Act, originally enacted in 1978. As advertised on its website, "[t]he USOC has two primary responsibilities in its oversight of Olympic and Paralympic sport in the United States. The first is to generate resources in support of its mission, which is to help American athletes achieve sustained competitive excellence. The second is to ensure organizational resources are wisely and effectively used to that end." Furthermore, Defendant "...USOC is committed to creating a safe and positive environment for athletes' physical, emotional and social development and to ensuring that it promotes an environment free of misconduct."

17.     In or around January of 2011, the USOC designated the Karolyi Ranch the United States Olympic Training Site for Women's Gymnastics.

18.     As requirement for National Governing Bodies, such as USAG, to remain in "good standing" with USOC, USOC policies require that USAG "...l) comply with the safe sport policies of the corporation and with the policies and procedures of the independent safe sport organization designated by the corporation to enhance safe sport practices and to investigate and resolve safe sport violations (no exceptions to this requirement shall be allowed unless granted by the CEO, or his or her designee, after allowing the [National Governing Body] or PSO to present the reasons for such exception)..."

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

19.    Moreover, the USOC promulgates the SafeSport policies that prevent "...USOC employees, coaches, contracted staff, volunteers, board members, committee and task force members, and other individuals working with athletes or other sport participants while at an OTC, whether or not they are employees of the USOC" and "...[a]thletes training and/or residing at a USOC Olympic Training Center" from engaging in sexually abusive misconduct, including "child sexual abuse" and "sexual misconduct." *See* USOC Safe Sport Policies, Section II(c). SafeSport policy also has policies for identifying "grooming" behaviors, which it defines as, "...the most common strategy used by offenders to seduce their victims."

20.    During all relevant times herein, these policies (or prior versions that were substantially similar thereto) were in effect at USOC, and applied to USAG. Despite the existence of these policies, Defendant USOC allow NASSAR to continue to participate with minor children at USAG, the National Governing Body for Women's Gymnastics, and failed to adequately enforce these policies. Due to its failure to enforce these policies, the Plaintiffs' daughter was sexually harassed, abused, and molested by NASSAR; an individual who was subject to these policies, though they were not adequately enforced. Plaintiffs are informed, and on that basis, believe that Defendant USAG was at all times in "good standing" with Defendant USOC, despite failing to adhere to, and enforce the SafeSport policies, which it violated by allowing NASSAR access to minor gymnasts, including the Plaintiffs' daughter. Furthermore, in failing to report suspected child abuse of NASSAR, the Defendant USAG also withheld this information from the Plaintiffs, who could have intervened to avoid the harm to their daughter, as well as themselves.

21.    Under California *Penal Code* § 11165.7, USAG is an organization whose employees, agents, and/or servants are legally "mandated reporters", considering that USAG is a youth recreational program and USAG's employees' duties require direct contact and supervision of children.

## DOE DEFENDANTS 1 THROUGH 500

22.    Defendants DOES 1 through 500, inclusive, and each of them, are sued herein under said fictitious names. Plaintiffs are ignorant as to the true names and capacities of DOES 1 through 500, whether individual, corporate, associate, or otherwise, and therefore sue said

Defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiffs will request leave of Court to amend this Complaint to state their true names and capacities herein.

23.   USAG, USOC, and DOES 1 through 500, inclusive, are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to all specifically named Defendants as well as those fictitiously named herein.

24.   Plaintiffs are informed and believe, and on that basis, allege that at all times mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences herein alleged, and that Plaintiffs' damages, as herein alleged, were proximately caused by all said Defendants.

25.   At all times mentioned herein, each and every Defendant was an employee, agent, and/or servant of USAG, USOC, and DOES 1 through 500, inclusive, and/or was under their complete control and/or active supervision. Defendants and each of them are individuals, corporations, partnerships and/or other entities that engaged in, joined in, and conspired with other Defendants and wrongdoers in carrying out the tortuous and unlawful activities described in this Complaint.

26.   Plaintiffs are informed and believe, and on that basis, allege that at all times mentioned herein, there existed a unity of interest and ownership among Defendants and each of them such that any individuality and separateness between Defendants, and each of them, ceased to exist. Defendants and each of them were the successors-in-interest and/or alter egos of the other Defendants, and each of them, in that they purchased, controlled, dominated and operated each other without any separate identity, observation of formalities, or other manner of division.  To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and injustice.

27.   Plaintiffs are informed and believe, and on that basis, allege that at all times mentioned herein, USOC, USAG, and DOES 1 through 500 were the agents, representatives and/or employees of each and every other Defendant. In doing the things hereinafter alleged, Defendants and each of them were acting within the course and scope of said alternative personality, capacity,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-9-

COMPLAINT FOR DAMAGES

1   identity, agency, representation and/or employment and were within the scope of their authority,

2   whether actual or apparent.

3       28.     Plaintiffs are informed and believe, and on that basis allege that at all times

4   mentioned herein, USOC, USAG, and DOES 1 through 500 were the trustees, partners, servants,

5   joint venturers, shareholders, contractors, and/or employees of each and every other Defendant,

6   and the acts and omissions herein alleged were done by them, acting individually, through such

7   capacity and within the scope of their authority, and with the permission and consent of each and

8   every other Defendant and that said conduct was thereafter ratified by each and every other

9   Defendant, and that each of them is jointly and severally liable to Plaintiffs.

10  **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFFS**

11      29.     At all times material hereto, Plaintiffs' daughter was a minor participant and

12  member of USAG, and was under their complete control, dominion, and supervision. NASSAR

13  worked for, was employed by, and an agent/servant of USAG, USOC, and DOES 1 through 500

14  when NASSAR came into contact with the Plaintiffs' daughter.

15      30.     At all times material hereto, NASSAR was under the direct supervision,

16  management, agency, and control of Defendants USAG, USOC, and DOES 1 through 500,

17  inclusive. NASSAR was the team physician of Defendant USAG. While a team physician at

18  USAG, NASSAR's employment duties included coordinating the care for USAG at every national

19  and international competition, providing individual care and providing for the physical needs and

20  well-being of participants and members of USAG, and care including but not limited to osteopathic

21  adjustments and kinesiology treatment to participants and members of USAG, which included

22  Plaintiffs' child. Plaintiffs' child was a participant and member of USAG and it is under these

23  circumstances that Plaintiffs' child came to be under the direction and control of NASSAR, who

24  used his position of authority and trust to molest and sexually abuse Plaintiffs' child.

25      31.     As a member and participant of USAG while NASSAR was a team physician, the

26  Plaintiffs' daughter was under NASSAR's direct supervision, control and care, which created a

27  special, confidential, and fiduciary relationship between Plaintiffs, their daughter, and NASSAR.

28  Because of such relationship, NASSAR owed Plaintiffs a special duty of care. Additionally, as the

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-10-

COMPLAINT FOR DAMAGES

employers and supervisors of NASSAR, with knowledge that he was in contact with and providing care to children, Defendants USAG, USOC and DOES 1 through 500 were also in a special, confidential, and fiduciary relationship with Plaintiffs, owing them a duty of care.

32.     By assigning NASSAR as team physician of USAG, USAG represented to the community and participants and members of USAG that NASSAR was safe, trustworthy, and of high moral and ethical repute, such that parents of participants and members need not worry about having NASSAR interact with, and provide care to their minor children. Defendants did so in order to preserve their own public image and reputation, so they could retain past participants and members and recruit new participants and members, thus allowing donations and other financial support to continue flowing into their coffers for financial gain.

33.     Plaintiffs are informed and believes, and on that basis, allege that Defendants knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiffs, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff.

34.     Plaintiffs are informed and believe, and on that basis, allege that while Plaintiffs' daughter was a participant and member of USAG, Defendants engaged in a pattern and practice of employing other staff, coaches, and volunteers and retaining members known to be a danger to participants and members in their care, including NASSAR. Defendants employed multiple other professionals, staff, and agents who were known to be sexually abusive and/or were continuing to be abusive. USAG's own website catalogues a list of over twenty (20) individuals, nationwide, who are "Permanently Ineligible Members" at USAG for violation of Bylaw 9.2(a)(iii). That Bylaw section, promulgated by USAG, provides for "Special Categories of Misconduct"; specifically, the category of misconduct under 9.2(a)(iii) states: "Has been convicted of or has entered a plea of guilty or no contest to a criminal charge or indictment issued by an applicable City, County, State or Federal jurisdiction, and such charge or indictment directly or indirectly involved or related to sexual misconduct, child abuse or conduct that is a violation of any law or

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

regulation that is specifically designed to protect minors." It is upon information, and therefore belief, that the prevalence of sexually abusive members of USAG evidences the knowledge of USAG of the risk that minor gymnastics participants were placed at, while participating in USAG's programs. Furthermore, it is upon information, and therefore belief, that this evidences a widespread and systemic problem at USAG, of allowing sexually abusive members to participate in USAG's programs.

35.     Plaintiffs are informed and believe, and on that basis, allege that Defendants knew or should have known that sexually abusive staff, such as NASSAR, were violating USOC and USAG policies, without enforcement or abatement, and were continually allowed to be in contact with minor children, such as the Plaintiffs' daughter. As early as 1999, USOC was placed on notice by former USAG president Robert Colarossi, who wrote a letter to USAG, explaining that the safety procedures and policies that USOC required USAG to follow, were part of a "...fundamentally flawed process..." and that at USOC there was an "...apparent indifference to the welfare of young children manifest in the Committee's actions." *See* Exhibit A as the Letter from Robert Colarossi to USOC.

36.     Plaintiffs are informed and believe and on that basis, allege Defendants knew of, or should have known of, NASSAR's propensity and disposition to engage in sexual misconduct with minors before he sexually abused and molested Plaintiffs' daughter, and knew of the probability that NASSAR would molest minors with whom he came into contact, such as Plaintiffs' child.

37.     Defendants failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct by NASSAR in the future, including avoiding placement of NASSAR in a position where contact and interaction with children is an inherent function. Defendants ignored and suppressed the past sexual misconduct NASSAR had engaged in, and concealed that information from the Plaintiffs.

38.     Plaintiffs are informed and believe and on that basis allege, that Defendants were apprised, knew or should have known of and/or were put on notice of NASSAR's past sexual abuse of children, past claims and/or investigations, and his propensity and disposition to engage in such unlawful activity and unlawful sexual activity with minor participants and members such

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-12-
COMPLAINT FOR DAMAGES

that Defendants knew or should have known that NASSAR would commit wrongful sexual acts with participants and members, including Plaintiffs' child. Plaintiffs are informed and believe, and on that basis allege that personnel and/or employment records and other records of Defendants' reflect numerous incidents of inappropriate sexual contact and conduct with minor participants and members by NASSAR and other professionals, employees, assistants, agents, supervisors and others, including incidents occurring both on and off the physical premises of such Defendants and at national and international meets. Based on these records, Defendants knew and/or should have known of NASSAR's history of sexual abuse, past claims and/or past investigations, and his propensity and disposition to engage in unlawful activity and unlawful sexual activity with participants and members such that Defendants knew or should have known that NASSAR would commit wrongful sexual acts with those minor participants and members, including Plaintiff.

39. Because of the relationship between Plaintiffs and Defendants, Defendants had an obligation and duty under the law not to hide material facts and information about NASSAR's past, and his deviant sexual behavior and propensities. Additionally, Defendants had an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard minors who were reasonably likely to come in contact with NASSAR, including the Plaintiffs' minor child at the time. Defendants willfully refused to notify, give adequate warning and implement appropriate safeguards, thereby creating the peril that ultimately damaged Plaintiffs.

40. Plaintiffs are informed and believe and on that basis allege that prior to Plaintiffs' daughter's sexual abuse by NASSAR, Defendants engaged in a pattern and practice of employing sexual abusers. Defendants concealed these facts from participants and members, their parents, the Los Angeles County community, the gymnastics community, the public at large, the United States government, various local governments, and law enforcement agencies.

41. Furthermore, Defendant USAG violated its own policies, as well as those policies of the USOC, in allowing NASSAR to come into contact with the Plaintiff. USAG's policies, entitled "Standards of Behavior" provide that, "Avoid Being Alone with a Minor. Gymnastics is a sport that lends itself to one-on-one situations between a coach and a gymnast. Avoid being alone with a child or any group of children in a private setting (e.g., locker room, bathroom, office,

-13-
**COMPLAINT FOR DAMAGES**

vehicle or residence), and avoid being alone with a child or any group of children in any place that is inappropriate to the coach-athlete relationship. When a one-on-one situation is necessary, such as private coaching lessons or conversations, conduct the activity within the view of another adult." Some of the abuse perpetrated by NASSAR against the Plaintiffs' daughter, was perpetrated in solitude, outside of the view of any adults and in direct violation of USAG's and USOC's policies implemented for the safety of participants.

42. Plaintiffs are informed and believe and on that basis allege that as part of Defendants' conspiratorial and fraudulent attempt to hide NASSAR's propensity to sexually abuse children, and prior sexual misconduct with children, from public scrutiny and criminal investigation, Defendants implemented various measures designed to make NASSAR's conduct harder to detect and ensure minors with whom he came into contact, such as Plaintiffs' child, would be sexually abused, including:

a.   Permitting NASSAR to remain in a position of authority and trust after Defendants knew or should have known that he was a molester of children;

b.   Placing NASSAR in a separate and secluded environment, at USAG and USOC authorized camps and events, including assigning him unfettered access and control over minor participants and members that included individual and private examinations, private osteopathic adjustments without a chaperone, and allowing NASSAR to physically and sexually interact with the children, including Plaintiffs' child;

c.   Failing to disclose NASSAR's prior record of misconduct, sexual abuse, harassment and molestation and his propensity to commit such acts towards participants and members in USAG's and USOC's program, the public at large, and law enforcement;

d.   Allowing NASSAR's unsupervised and un-controlled access to minors, including the Plaintiffs' child;

e.   Holding out NASSAR to Plaintiffs, other participants and members of USAG and USOC, and the public at large as a trustworthy and honest person of high ethical and moral repute who was capable and worthy of being granted unsupervised access to the children of USAG;

f.   Failing to investigate or otherwise confirm or deny such facts about NASSAR including prior arrests, charges, claims and investigations for sexual abuse;

///

///

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**COMPLAINT FOR DAMAGES**

g.  Failing to inform, or concealing from Plaintiffs and law enforcement officials the fact that Plaintiffs children and others were or may have been sexually abused, harassed and molested, after Defendants knew or should have known that NASSAR may have sexually abused Plaintiffs child or others, thereby enabling Plaintiffs' child to continue to be endangered and sexually abused, harassed, molested, and/or creating the circumstance where Plaintiffs child and others were less likely to receive proper medical treatment, thus exacerbating the harm to Plaintiffs and their child;

h.  Holding out NASSAR to Plaintiffs and to the community as being in good standing and trustworthy;

i.  Cloaking NASSAR's prior sexual misconduct with children within the facade of normalcy, thereby disguising the nature of his sexual abuse and contact with minors;

j.  Failing to take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by NASSAR such as avoiding placement of NASSAR in functions or environments in which his solitary contact with children was inherent;

k.  Failing to put in place a system or procedure to supervise or monitor physicians, athletic trainers, and agents to insure they do not molest or abuse minors in Defendants' care.

43.  By his position within the Defendants' institutions, NASSAR attained a position of influence over Plaintiffs, their child, and others. Defendants' conduct created a situation of peril that was not, and could not be appreciated by Plaintiffs. By virtue of Defendants' conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose and hide NASSAR's past and present conduct from the community, the public at large and law enforcement, Defendants allowed NASSAR to remain in a position of influence where his unsupervised or negligently supervised conduct with minor participants and members made the molestation and abuse of minor participants and members possible.

44.  By his position within the Defendants' institutions, Defendants and NASSAR demanded and required that Plaintiffs and their daughter respect NASSAR, in his position as team physician for USAG, authorized by USOC.

45.  NASSAR did sexually abuse, harass and molest the Plaintiffs' child, who was a minor child at the time of the acts at-issue, by acts including, but not limited to: placing his fingers into the Plaintiffs' daughter's vagina, under the guise of providing medical treatment. Plaintiffs are informed and believe, and on that basis allege, that such conduct by NASSAR was based upon Plaintiffs' daughter's gender, and was done for NASSAR's sexual gratification. These actions

-15-

**COMPLAINT FOR DAMAGES**

upon Plaintiffs' daughter were performed by NASSAR without the free consent of Plaintiffs or their daughter, as their daughter was a young child, and could therefore not give valid legal consent.

46.     During the period Plaintiffs' daughter was being sexually abused and harassed by NASSAR, Defendants had the authority and ability to prevent such abuse by removing NASSAR from his position as team physician at USAG and in his status with the USOC. They failed to do so, allowing the abuse to occur and to continue unabated. Plaintiffs are informed and believe and on that basis, allege that this failure was a part of Defendants' conspiratorial plan and arrangement to conceal NASSAR's wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and abuse, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement. Such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants, while fostering an environment where such abuse could continue to occur.

47.     As a direct result of the sexual harassment and abuse that the Plaintiffs' daughter suffered by NASSAR and Defendants USAG, USOC and DOES 1 through 500 failing to inform the Plaintiffs of the danger posed to the Plaintiffs' daughter by NASSAR, Plaintiffs have had difficulty in meaningfully interacting with others, including those in positions of authority over Plaintiffs including physicians, athletic supervisors, and agents. Plaintiffs have been limited in their ability to meaningfully interact with others due to the trauma of childhood sexual abuse upon their daughter, and the upset of having known that they could have prevented such, had Defendants conveyed the appropriate information. This inability to interact creates conflict with Plaintiffs' values of trust and confidence in others, and has caused Plaintiffs substantial emotional distress, anxiety, nervousness and fear. As a direct result of this conduct, Plaintiffs suffer immensely, including, but not limited to, encountering issues with a lack of trust, various negative psychological and emotional sequelae, depressive symptoms, anxiety, and nervousness.

48.     As a direct and proximate result of Defendants' tortious acts, omissions, wrongful conduct and breaches of their duties, Plaintiffs' employment and professional development has

been adversely affected. Plaintiffs have lost wages and will continue to lose wages in an amount to be determined at trial. Plaintiffs have suffered substantial economic injury, all to Plaintiffs' general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

49.     As a further direct and proximate result of Defendants' wrongful actions, as herein alleged, Plaintiffs has been hurt in their health, strength and activity. Plaintiffs have sustained permanent and continuing injury to their nervous system and person, which has caused and continues to cause great mental, physical and nervous pain, suffering, fright, upset, grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

50.     As is set forth herein, Defendants and each of them have failed to uphold numerous mandatory duties required of them by state and federal law, as well as their own internal written policies and procedures, including:

- Duty to use reasonable care to protect participants and members from known or foreseeable dangers

- Duty to inform the Plaintiffs of the known risks to the health and well-being of their daughter while in USAG and/or USOC sponsored, authorized, and supervised programs, events and trainings;

- Duty to enact policies and procedures that are not in contravention of the Federal Civil Rights Act, section 1983 and the 14th amendment of the United States Constitution;

- Duty to protect participants and members and staff, and provide adequate supervision;

- Duty to ensure that any direction given to participants and members is lawful, and that adults act fairly, responsible and respectfully towards participants and members;

- Duty to properly train staff so that they are aware of their individual responsibility for creating and maintaining a safe environment;

- Duty to review the criminal history of applicants and current employees;

- Duty to provide diligent supervision over minors;

- Duty to act promptly and diligently and not ignore or minimize problems.

- Duty to report suspected incidents of child abuse and more specifically childhood sexual abuse (*Penal Code* sections 11166, 11167).

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-17-

51.     Defendants and each of them had and have a duty to protect participants and members, including Plaintiff. Defendants were required to, and failed, to provide adequate supervision, and failed to be properly vigilant in seeing that supervision was sufficient at USAG and USOC to ensure the safety of Plaintiffs' child and others.

52.     Despite having a duty to do so, Defendants failed to adequately train and supervise all staff to create a positive and safe environment, specifically including training to perceive, report and stop inappropriate sexual conduct by other members of the staff, specifically including NASSAR with children.

53.     Defendants failed to enforce their own rules and regulations designed to protect the health and safety of the participants and members. Further, they failed to adopt and implement safety measures, policies and procedures designed to protect minor children such as Plaintiffs' child from the sexually exploitive and abusive acts of their agents and employees such as NASSAR.

54.     In subjecting Plaintiffs to the wrongful treatment herein described, Defendants USAG, USOC and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiffs are informed, and on that basis allege, that specifically, the Defendants acted in concert, and under their authority as child care providers, with reckless disregard for the concern of the minor participants in its charge, in order to further financially benefit their respective business' growth. The Defendants acted intentionally in creating an environment that harbored molesters, put the vulnerable minor participants at-risk of harm, ignored clear warning signs and their duties to report sexual abusers and molesters in their ranks, to maintain a façade of normalcy, in order to maintain its funding and provide further financial growth of USAG and USOC, on the international level. The safety of the minor participants that were entrusted to USAG and represented as being protected through USOC procedures, was compromised due to Defendants desire to maintain the status quo of the USAG and USOC organizations, and avoid any public scrutiny for its misconduct. Plaintiffs are informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-18-

1    above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiffs

2    are therefore entitled to recover punitive damages, in an amount to be determined by the court,

3    against Defendants USAG, USOC and DOES 1 through 500.

### FIRST CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Plaintiffs Against All Defendants)

6    55.    Plaintiffs re-allege and incorporate by reference herein each and every allegation

7    contained herein above as though fully set forth and brought in this cause of action.

8    56.    USAG, USOC, and DOES 1 through 500's conduct toward Plaintiffs, as described

9    herein, was outrageous and extreme.

10    57.    A reasonable person would not expect or tolerate Defendants putting NASSAR in

11    positions of authority at USAG, USOC or DOES 1 through 500, which enabled NASSAR to have

12    access to minor students, including the Plaintiffs' daughter, so that he could commit wrongful

13    sexual acts with her, including the conduct described herein above. Plaintiffs had great trust, faith

14    and confidence in in Defendants, which, by virtue of NASSAR and Defendants' wrongful conduct,

15    turned to fear.

16    58.    Moreover, by failing to report NASSAR or honor any of their legal reporting

17    obligations and by failing to promptly notify the Plaintiffs of the abuse of their daughter,

18    Defendants knew that Plaintiffs would be directly harmed. Under the holding in *Phyllis P.* case, a

19    special relationship and a duty to notify the Plaintiffs was stated. Such duty being independent of

20    any duty Defendants owed to the Plaintiffs' child and is a direct duty owed to the Plaintiffs and

21    was thereby created with Plaintiffs, whereby Plaintiffs are intended or direct victims of Defendants

22    failures and can recover for any emotional distress proximately caused thereby. Specifically,

23    Defendants had knowledge of NASSAR's dangerous propensities to sexually abuse children, yet

24    concealed and failed to disclose to the Plaintiffs this information.

25    59.    A reasonable person would not expect or tolerate Defendants to be incapable of

26    supervising and preventing employees of Defendants, including NASSAAR, from committing

27    wrongful sexual acts with minor students, including Plaintiffs, or to properly supervise NASSAR

28    to prevent such abuse from occurring, or to promptly notify parents or authorities.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

60.     Defendants' conduct described herein was intentional and malicious and done for the purpose of causing, or with the substantial certainty that it would cause Plaintiffs to suffer humiliation, mental anguish and emotional and physical distress.

61.     As a result of the above-described conduct, Plaintiffs suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

62.     In subjecting Plaintiffs to the wrongful treatment herein described, Defendants acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under California *Civil Code* section 3294. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

## SECOND CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICES (*BUSINESS & PROFESSIONS CODE* §17200)
### (All Plaintiffs Against All Defendants)

63.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

64.     Plaintiffs are informed and believe and on that basis allege that NASSAR, USOC and USAG have engaged in unlawful, unfair and deceptive business practices including allowing NASSAR to engage in repeated harassment of participants and members, including Plaintiffs' child, and failing to take all reasonable steps to prevent harassment and abuse from occurring. The unlawful, unfair and deceptive business practices also included failing to adequately investigate, vet, and evaluate individuals for employment with USAG and USOC, refusing to design, implement, and oversee policies regarding sexual harassment and abuse of children in a reasonable manner that is customary in similar educational environments. Plaintiffs are informed and believes and on that basis alleges that NASSAR, USOC, and USAG have engaged in unlawful, unfair and

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

deceptive business practices including concealing sexual harassment, abuse and/or molestation claims by participants and members, such as Plaintiffs' child, so as to retain other participants and members within USAG who were not apprised of such illicit sexual misconduct by NASSAR.

65. Plaintiffs are informed and believe that Defendants engaged in a common scheme, arrangement or plan to actively conceal allegations against sexual abusers who were employees, agents, members, and/or participants at USAG and USOC, including NASSAR, such that USAG and USOC could maintain their public image, and avoid detection of such abuse and abusers. Plaintiffs are informed and believes and thereon alleges that Defendants actively concealed these allegations, such that Defendants would be insulated from public scrutiny, governmental oversight, and/or investigation from various law enforcement agencies, all done in order to maintain the false sense of safety for participants and their families and to perpetuate the program financially.

66. By engaging in unlawful, unfair and deceptive business practices, NASSAR, USOC and USAG benefitted financially to the detriment of its competitors, who had to comply with the law.

67. Unless restrained, USAG and USOC will continue to engage in the unfair acts and business practices described above, resulting in great and irreparable harm to Plaintiffs and/or other similarly situated participants and members.

68. Plaintiffs seek restitution for all amounts improperly obtained by USOC and USAG through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of Plaintiffs and all other similarly situated participants and members who were also subjected to USOC and USAG's illegal and unfair business practices.

69. Pursuant to section 17203 of the California *Business and Professions Code* and available equitable powers, Plaintiffs are entitled to a preliminary and permanent injunction, enjoining USOC and USAG from continuing the unlawful and unfair business practices described above. Further, Plaintiffs seek the appointment of a court monitor to enforce its orders regarding client safety. In addition, Plaintiffs are entitled to recover reasonable attorneys' fees pursuant to

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-21-

the California *Business and Professions Code* and section 1021.5 of the *California Code of Civil Procedure*.

## THIRD CAUSE OF ACTION
### NEGLIGENT INFLCTION OF EMOTIONAL DISTRESS
**(All Plaintiffs Against All Defendants)**

70.     The Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

71.     Defendants' conduct toward Plaintiffs, as described herein, was outrageous and extreme.

72.     A reasonable person would not expect or tolerate Defendants putting NASSAR in a position of authority at USOC and USAG, which enabled NASSAR to have access to minor students, including Plaintiffs' child, so that he could commit wrongful sexual acts with them, including the conduct described herein above. Plaintiffs held great trust, faith and confidence in Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear. Moreover, by failing to report NASSAR or honor any of their legal reporting obligations and by failing to promptly notify Plaintiffs of the abuse, Defendants knew that Plaintiffs would be directly harmed and under the holding in *Phyllis P. v. Claremont Unified School District*, 183 Cal. App. 3d at 1193, a special relationship was thereby created with Plaintiffs, whereby Plaintiffs are intended or direct victims of Defendants failures and can recover for any emotional distress proximately caused thereby.

73.     By having knowledge of, and refusing to, provide information pertaining to NASSAR's dangerousness around children, Defendants consciously usurped the parental prerogative, and caused emotional injury to the Plaintiffs. Specifically, Defendants had knowledge of NASSAR's dangerousness, but Defendants concealed such information from the Plaintiffs.

74.     A reasonable person would not expect or tolerate Defendants to be incapable of supervising and preventing employees of Defendants, including NASSAR, from committing wrongful sexual acts with minor students, including Plaintiffs' children, or to properly supervise NASSAR to prevent such abuse from occurring or to promptly notify parents or authorities.

///

///

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

75. Defendants' conduct described herein was negligent and done without regard as to whether it would cause Plaintiffs to suffer humiliation, mental anguish and emotional and physical distress.

76. As a result of the above-described conduct, Plaintiffs suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE
#### (All Plaintiffs Against ALL Defendants)

77. Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

78. Prior to and after the first incident of NASSAR's sexual harassment, molestation and abuse of Plaintiffs' child, through the present, Defendants, knew and/or should have known that NASSAR had and was capable of sexually, physically, and mentally abusing and harassing Plaintiffs' child or other victims. Despite this knowledge, no one at USAG or USOC warned the Plaintiffs' of this danger posed to their daughter.

79. Defendants and each of them had special duties to protect the Plaintiffs and their child and the other participants and members, when such minors were entrusted to Defendants' care by their parents. Plaintiffs' daughter's care, welfare and physical custody was entrusted to Defendants. Defendants voluntarily accepted the entrusted care of Plaintiffs' daughter. As such, Defendants owed Plaintiffs as well as their daughter, a minor child, a special duty of care that adults dealing with children owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants and Plaintiffs. Defendants stood *in loco parentis* with the Plaintiffs.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-23-
**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

80.    Defendants breached their duties of care to the Plaintiffs by allowing NASSAR to come into contact with the Plaintiffs' daughter and other participants and members, without supervision; by failing to adequately hire, supervise and retain NASSAR whom they permitted and enabled to have access to Plaintiffs' daughter; by concealing from Plaintiffs, and law enforcement that NASSAR was sexually harassing, molesting and abusing minors; and by holding NASSAR out to Plaintiffs as being of high moral and ethical repute, in good standing and trustworthy.

81.    Defendants breached their duties to Plaintiffs by failing to investigate or otherwise confirm or deny such facts of sexual abuse by NASSAR, failing to reveal such facts to Plaintiffs, the community and law enforcement agencies, and by placing NASSAR into a position of trust and authority, holding him out to Plaintiffs and the public as being in good standing and trustworthy.

82.    Defendants breached their duty to Plaintiffs by failing to adequately monitor and supervise NASSAR around the Plaintiffs' daughter and failing to prevent NASSAR from committing wrongful sexual acts with minors including Plaintiffs' daughter. Defendants' voluminous past records of sexual misconduct by NASSAR caused Defendants to know, or gave them reason to know, of NASSAR's incapability to serve as a team physician, providing for the physical care of minor females.

83.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

///

///

///

-24-
COMPLAINT FOR DAMAGES

### FIFTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (All Plaintiffs Against All Defendants)

84.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

85.     Defendants, as childcare custodians representing that they would keep the Plaintiffs' child safe, were in a fiduciary relationship with Plaintiffs, owing them a special duty of due care. All Defendants are mandated reporters, or organizations required to comply with Mandated Reporting laws, with respect to claims of child abuse and child safety.

86.     Moreover, Defendants owed Plaintiffs a statutory, common law and constitutional duty to protect them and guarantee their safety while in their custody, care, and control. Plaintiffs also have a constitutionally guaranteed interest in the rearing and upbringing of their minor children, including but not limited to, the ability to ensure their child's safety both at home and at childcare institutions.

87.     The Defendants also owed a special duty to Plaintiffs. As direct victims for failure to notify of abuse of their minor child (*See Phyllis P. v. Claremont Unified School District*, 183 Cal. App. 3d at 1193) which held that a school district had a special relationship with a parent because the parent was the "real and foreseeable" victim of the defendants' negligent conduct. Direct victims may bring claims where there was a negligent breach of a duty arising out of a preexisting relationship. Any breach committed by the Defendants violates this special relationship and duty owed to Plaintiffs.

88.     Defendants breached their fiduciary duty by failing to properly supervise NASSAR and take appropriate steps to prevent the lewd and lascivious conduct perpetrated by NASSAR against Plaintiffs' child. Defendants also failed to report NASSAR pursuant to USOC and USAG policy. Defendants USAG and USOC also failed to implement or follow appropriate policies and procedures to protect minors, including the Plaintiffs' child. In addition, Defendants failed to report NASSAR's abuse or promptly notify Plaintiffs.

89.     The employees, servants, agents, volunteers or other representatives of USOC and USAG, respectively, willfully and intentionally ignored behavior in NASSAR and complaints against NASSAR that they should have reported due to their responsibility as mandated reporters.

90.     As a result of the above-described conduct, Plaintiffs suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

91.     In subjecting Plaintiffs to the wrongful treatment herein described, Defendants USAG and USOC acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under California *Civil Code* section 3294. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against USAG and USOC, in a sum to be shown according to proof.

### SIXTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD
### (All Plaintiffs Against All Defendants)

92.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

93.     By holding NASSAR out as an agent of Defendants, and by allowing him to undertake the physical care and athletic training of minor children such as Plaintiffs' child, Defendants entered into a confidential, fiduciary, and special relationship with Plaintiff.

94.     By holding themselves out as the national program for woman's gymnastics, undertaking to select and train national gymnastics teams, and facilitating competition both nationally and internationally of Plaintiffs daughter and other minor team participants and members, Defendants entered into a confidential, fiduciary and special relationship with Plaintiffs and their minor daughter (at the time).

95.     Defendants breached their confidential, fiduciary duty and special duties to Plaintiffs by the wrongful and negligent conduct described above and incorporated into this cause of action, and in so doing, gained an advantage over Plaintiffs in matters relating to Plaintiffs'

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-26-

child's safety, security and health. In particular, in breaching such duties as alleged, Defendants were able to sustain their status as an institution of high moral repute, and preserve their reputation, all at the expense of Plaintiff's further injury and in violation of Defendants' mandatory duties.

96.     By virtue of their confidential, fiduciary and special relationship with Plaintiff, Defendants owed Plaintiffs a duty to:

a.     Investigate or otherwise confirm or deny such claims of sexual abuse;

b.     Reveal such facts to Plaintiffs, the gymnastics community, the community at large, and law enforcement agencies;

c.     Refuse to place NASSAR and other molesters in positions of trust and authority within Defendants' institutions;

d.     Refuse to hold out NASSAR and other molesters to the public, the community, minors, parents and law enforcement agencies as being in good standing and, trustworthy in keeping with him and his position as a team physician and authority figure;

e.     Refuse to assign NASSAR and other molesters to positions of power within USAG, USOC and over minors; and

f.     Disclose to Plaintiffs, the public, the school community, minors, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that NASSAR had engaged in with children.

97.     Defendants' breach of their respective duties included:

a.     Not making reasonable investigations of NASSAR;

b.     Issuing no warnings about NASSAR;

c.     Permitting NASSAR to routinely be alone with and in control of minors, unsupervised;

d.     Not adopting a policy to prevent NASSAR from routinely having minors and participants and members in his unsupervised control;

e.     Making no reports of any allegations of NASSAR's abuse of participants and members, or of minors prior to or during his employment and/or agency at USAG and USOC; and

f.     Assigning and continuing to assign NASSAR to duties which placed him in positions of authority and trust over minors, positions in which NASSAR could easily isolate and sexually abuse minors.

98.     At the time that Defendants engaged in such suppression and concealment of acts, such acts were done for the purpose of causing Plaintiffs to forbear on Plaintiffs' rights.

///

**COMPLAINT FOR DAMAGES**

99. Defendants' misconduct did reasonably cause Plaintiffs to forbear on Plaintiffs' rights.

100. The misrepresentations, suppressions and concealment of facts by Defendants were intended to and were likely to mislead Plaintiffs and others to believe that Defendants had no knowledge of any charges, claims or investigations against NASSAR, or that there were no other charges, claims or investigations of unlawful or sexual misconduct against NASSAR or others and that there was no need for them to take further action or precaution.

101. The misrepresentations, suppressions and concealment of facts by Defendants was likely to mislead Plaintiffs and others to believe that Defendants had no knowledge of the fact that NASSAR was a molester, and was known to commit wrongful sexual acts with minors, including Plaintiffs' child.

102. Defendants knew or should have known at the time they suppressed and concealed the true facts regarding others' sexual molestations, that the resulting impressions were misleading.

103. Defendants suppressed and concealed the true facts regarding NASSAR with the purpose of: preventing Plaintiffs, and others, from learning that NASSAR and others had been and were continuing to sexually harass, molest and abuse minors and others under NASSAR's and Defendants' control, direction, and guidance, with complete impunity; inducing people, including Plaintiffs' daughter and other benefactors and donors to participate and financially support Defendants' program and other enterprises of Defendants; preventing further reports and outside investigations into NASSAR and Defendants' conduct; preventing discovery of Defendants' own conduct; avoiding damage to the reputations of Defendants; protecting Defendants' power and status in the community and the gymnastics community; avoiding damage to the reputation of Defendants, or Defendants' institutions; and avoiding the civil and criminal liability of Defendants, of NASSAR, and of others.

104. At all times mentioned herein, Defendants, and in particular USOC and USAG, with knowledge of the tortious nature of their own and NASSAR's conduct, knowingly conspired and gave each other substantial assistance to perpetrate the misrepresentations, fraud and deceit alleged herein—covering up the past allegations of sexual misconduct lodged against NASSAR,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

and allowing NASSAR to remain in his position as a team physician so they could maintain their reputations and continue with their positions within the organization.

105.   Plaintiffs and others were misled by Defendants' suppressions and concealment of facts, and in reliance thereon, were induced to act or induced not to act, exactly as intended by Defendants. Specifically, Plaintiffs were induced to believe that there were no allegations of criminal or sexual abuse against NASSAR and that he was safe to be around children. Had Plaintiffs known the true facts about NASSAR, they would have not participated further in activities of NASSAR, or continued to financially support Defendants' activities. They would have reported the matters to the proper authorities, to other minor participants and members and their parents so as to prevent future recurrences; they would not have allowed children, including Plaintiffs' daughter, to be alone with, or have any relationship with NASSAR; they would not have allowed children, including Plaintiffs' daughter, to attend or be under the control of Defendants; they would have undertaken their own investigations which would have led to discovery of the true facts; and they would have sought psychological counseling for Plaintiffs' daughter and themselves, and for other children molested and abused by NASSAR.

106.   By giving NASSAR the position of team physician, Defendants impliedly represented that NASSAR was safe and morally fit to give children care and provide osteopathic adjustments.

107.   When Defendants made these affirmative or implied representations and non-disclosures of material facts, Defendants knew or should have known that the facts were otherwise. Defendants knowingly and intentionally suppressed the material facts that NASSAR had on numerous, prior occasions sexually, physically, and mentally abused minors and participants and members of Defendants, including Plaintiffs' daughter, and knew of or learned of conduct, or should have known of conduct by NASSAR which placed Defendants on notice that NASSAR had previously been suspected of felonies, including unlawful sexual conduct with minors, and was likely abusing children.

108.   Because of Plaintiffs' position on the outside of these organizations, and because of the status of NASSAR as a trusted, authority figure to Plaintiffs and their daughters, Plaintiffs

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-29-
COMPLAINT FOR DAMAGES

1    were vulnerable to NASSAR and the representations of USOC and USAG, both express and

2    implied. NASSAR sought Plaintiffs' daughter out, and was empowered by and accepted Plaintiffs'

3    and their daughter's vulnerability. Plaintiffs' vulnerability also prevented Plaintiffs from

4    effectively protecting their daughter from the sexual advances of NASSAR.

5        109.   Defendants had the duty to obtain and disclose information relating to sexual

6    misconduct of NASSAR.

7        110.   Defendants misrepresented, concealed or failed to disclose information relating to

8    sexual misconduct of NASSAR.

9        111.   Defendants knew that they had misrepresented, concealed or failed to disclose

10   information related to sexual misconduct of NASSAR.

11       112.   Plaintiffs justifiably relied upon Defendants for information relating to sexual

12   misconduct of NASSAR.

13       113.   USOC, USAG and DOES 1 through 500, in concert with each other and with the

14   intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would

15   misrepresent, conceal or fail to disclose information relating to the sexual misconduct of NASSAR,

16   the inability of Defendants to supervise or stop NASSAR from sexually harassing, molesting and

17   abusing Plaintiffs' child, and their own failure to properly investigate, supervise and monitor his

18   conduct with minor participants and members.

19       114.   By so concealing, Defendants committed at least one act in furtherance of the

20   conspiracy.

21       115.   As a result of the above-described conduct, Plaintiffs have suffered and continue to

22   suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

23   distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of

24   enjoyment of life; have suffered and continue to suffer and was prevented and will continue to be

25   prevented from performing daily activities and obtaining the full enjoyment of life; will sustain

26   loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for

27   medical and psychological treatment, therapy, and counseling.

28   ///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-30-

**COMPLAINT FOR DAMAGES**

116.   In addition, when Plaintiffs finally discovered the fraud of Defendants, and continuing thereafter, Plaintiffs experienced recurrences of the above-described injuries. Plaintiffs experienced extreme and severe mental anguish and emotional distress that Plaintiffs had been the victim of Defendants' fraud; that Plaintiffs had not been able to help other minors being molested because of the fraud, and that Plaintiffs had not been able, because of the fraud, to receive timely medical treatment needed to deal with the problems Plaintiffs have suffered and continue to suffer as a result of the sexual harassment, molestation and abuse of their daughter.

117.   In subjecting Plaintiffs to the wrongful treatment herein described, Defendants USAG, USOC, and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiffs are informed, and on that basis, allege that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, and DOES 1 through 500.

**WHEREFORE,** Plaintiffs pray for a jury trial and for judgment against Defendants as follows:

### FOR ALL CAUSES OF ACTION

1.   For past, present and future non-economic damages in an amount to be determined at trial;

2.   For past, present and future special damages, including but not limited to past, present and future lost earnings, economic damages and others, in an amount to be determined at trial;

3.   Any appropriate statutory damages;

4.   For costs of suit;

5.   Punitive damages, according to proof, though not as to the Negligence Causes of Action (Cause of Action 3 and 4);

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-31-
COMPLAINT FOR DAMAGES

6.      For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

7.      For attorney's fees pursuant to California *Code of Civil Procedure* sections 1021.5, *et seq.*, or as otherwise allowable by law;

8.      For declaratory and injunctive relief, including but not limited to court supervision of USAG and/or USOC; and

9.      For such other and further relief as the Court may deem proper.

Dated: June 30, 2017                                    **MANLY, STEWART & FINALDI**


By:      *John C. Manly*
         JOHN C. MANLY, Esq
         Attorneys for Plaintiffs JANE PCNE DOE
         and JOHN PCNM DOE

## DEMAND FOR JURY TRIAL

Plaintiffs JANE PCNE DOE and JOHN PCNM DOE hereby demands a trial by jury.

Dated: June 30, 2017

MANLY, STEWART & FINALDI

By: *John C. Manly*

JOHN C. MANLY, Esq.
Attorneys for Plaintiffs JANE PCNE DOE
and JOHN PCNM DOE

06/29/2017

**EXHIBIT A**



**USA GYMNASTICS**

October 11, 1999



Mr. William J. Hybl, President
Mr. Dick Schultz, Executive Director
Mr. Scott Blackmun, Deputy Executive Director
and General Counsel
United States Olympic Committee
One Olympic Plaza
Colorado Springs, CO 80909

Dear Bill, Dick and Scott:

I am reluctant, given the extraordinary demands being placed on each of you these days, to bring a matter directly to your attention. Unfortunately, I have concluded that I must. The recent experiences of USA Gymnastics with the USOC's Membership and Credentials Committee has been so troubling for our organization, and for me personally, that I feel compelled to share it with you.

On September 7, our Chair, Sandy Knapp, received a letter signed by Membership and Credentials Chairman, Steve Sobel, informing us that "USAG is not in compliance with National Governing Body and membership requirements." This communication is, in our view, the inevitable result of a fundamentally flawed process. Let me be direct; the professional and volunteer leadership of USA Gymnastics believes that the USOC's Membership and Credentials' audit process is badly broken and, perhaps more importantly, are deeply concerned by the apparent indifference to the welfare of young children manifest in the Committee's actions.

There is much about the accomplishments of USA Gymnastics during the past two decades in which we take great pride. Perhaps nothing gives us a greater sense of satisfaction, however, than our national leadership among sports organizations in attempting to protect young athletes from coming in contact with individuals who are unfit to have the honor of being called "coach". While other organizations have chosen to ignore the problem of child abuse in youth sports (see enclosed copy of recent cover story from the September 13 edition of *Sports Illustrated*), USA Gymnastics has investigated every charge and processed each complaint in an effort to protect the children who put their faith in us. To date we have devoted hundreds of thousands of dollars to this effort.

Pan American Plaza • 201 South Capitol Avenue • Suite 300 • Indianapolis, IN 46225 • Phone: 317-237-5050 • Fax: 317-237-5069.

Ex A

10-Nov-2005  16:39    From-3172971000                                    T-172   P.003/010   F-524

Believing this to be an area in which there is no margin for error, USA Gymnastics established its rules and procedures with a single clear priority in mind – serving the best interests of the young people in our sport. In order to do that, we established procedures that allowed the president of USA Gymnastics to suspend immediately (pending a prompt resolution of the underlying allegation) any individual charged with a felony involving a statute designed to protect children (e.g. child molestation, statutory rape, battery or assault against a minor), and further allowed the president to deny or rescind the membership of any individual who was convicted or pleaded guilty to a felony. We believed when we created those rules (and continue to believe today) that our approach was the proper one. The Membership and Credentials Committee disagreed with us.

After extensive discussions and correspondence with representatives of the Committee by me and Sandy Knapp, the matter was referred to Jack Swarbrick and Scott. Following his discussions with Scott, Jack recommended to us that USAG agree to forego our ability to suspend individuals who had been charged with a crime, but retain our ability to deny the privilege of membership where the judicial process had resulted in a felony conviction. This was not a compromise we were thrilled with (it meant that an individual who is arrested for child molestation and freed on bond can go back to the gym and coach the next day), but one we were prepared to live with in the interest of getting the matter behind us. Remarkably, despite the good faith efforts of two people – Scott and Jack – infinitely more qualified to evaluate the situation than any member of the Membership and Credentials Committee, that Committee rejected this approach. What is particularly stunning about the Committee's decision is the nature of its rejection. We did not receive a measured response aimed, for example, at trying to distinguish cases involving a felony conviction where the nexus between the conviction and potential risk to children was tenuous, but rather were told merely that "a hearing must be provided for in all situations and...USAG could not except from the hearing process, and impose an immediate suspension on, those individuals who has been subjected to a prior non-USAG judicial or administrative hearing" (emphasis added).

In hindsight, I suppose we should not have been surprised by the position taken by the Committee. During the now nearly two years these discussions have dragged on, USA Gymnastics has repeatedly been urged by members of the Committee to resolve the problem by conducting bare-bones telephonic hearings immediately upon receipt of a complaint. This exaltation of form over substance is all too typical of the predisposition of this Committee. More importantly, it also ignores the various reasons why such an approach is untenable and poses significant risk to our organization. As the USOC learned in 1994, the intersection between the criminal justice system and the Amateur Sports Act can be an especially treacherous location.

I suspect that if USAG Gymnastics invested additional time and money, we could cobble together some sufficiently muddled amendment to our Bylaws that would satisfy the Membership and Credentials Committee. That is, however, a use of Federation resources I am no longer prepared to allow. Simply stated, we have no intention of dealing further on this matter with representatives of the Membership and Credentials Committee.

2

We welcome the opportunity to address this matter in other forums acceptable to the three of you, but in inviting that resolution want you to know that we are more resolute than ever in our determination to do whatever it takes to protect the children we serve.

In anticipation of future discussions, let us be absolutely clear about our position. USA Gymnastics has no reluctance to provide hearings to any athlete or professional member in circumstances where hearings are appropriate. In fact, we believe our grievance and member discipline procedures are more refined, and the number of hearings we have conducted in the past ten years is greater, than those of almost any other national governing body. All we want to be certain of here is that: 1) we do not have a circumstance where a panel of three volunteers is asked to reconsider and independently evaluate the factual circumstances that give rise to a felony conviction in a court of law of competent jurisdiction in this country; and 2) we do not allow the occasion of a delay in the timing of a hearing (regardless of the legitimate factors which may contribute to that delay) to put any USA Gymnastics' member gymnasts in a position where we believe their personal safety to be at risk. From our perspective, any risk is an unacceptable risk when it comes to protecting young athletes from abuse.

While the circumstances of this particular issue have undeniably inflamed the passions of those of us responsible for leading USA Gymnastics, these unhappy circumstances are all too indicative of our experiences with this Committee in recent years. In brief, I believe that this Committee has fundamentally lost its way and ought to be reconstituted or its purpose redefined. What ought to be a positive experience of helping national governing bodies conduct a self-audit designed to make them better organizations has turned into a hyper-technical review of governance documents by individuals whose qualifications to conduct such a review are tenuous at best.

Properly conducted, we believe the Membership and Credentials Committee review could be a positive and productive experience. As the Committee which reviews the core activities of each national governing body, the Membership and Credentials Committee is in a position to serve as a valuable information source for what is and isn't working in our industry. Unfortunately, they do not view that as their mission. So we come to the circumstance we have here. The Membership and Credentials Committee reviews national governing bodies who, regrettably, appear to have chosen to ignore the issue of coaching misconduct (but have acceptable hearing procedures in place) and decrees these governing bodies to be in compliance. Yet the national governing body who has taken the lead in this country in moving to protect its athletes against physical, sexual and emotional abuse, and who has provided its procedures for doing so in great detail, is found to be out of compliance because we refuse to conduct a hearing to determine whether an individual who has been convicted of child molestation ought to be allowed to be a professional member of our association. That is a process and a result that no longer deserves the support of the Olympic family.

Again, my apologies for having to add to your already crowded agendas, but, as I hope you can now appreciate, this is a matter about which we feel passionately. It is a matter that goes to the core of the relationship between the national governing body and its

athletes, and so is a matter that ought to be of central importance to the USOC. As USA Gymnastics' experience demonstrates, this is not an issue that can be wished away. The USOC can either position itself as a leader in the protection of young athletes or it can wait until it is forced to deal with the problem under much more difficult circumstances. It is my sincere hope that the USOC will seize the opportunity presented by this dispute to follow the former course of action.

Thank you in advance for you attention to this matter.

Sincerely,

Robert Colarossi

Enclosure

CC:   Sandy Knapp
      Jack Swarbrick
      Michelle Dusserre-Farrell
      Gary Johansen
      Steve Sobel

Original



**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

John C. Manly, Esq. SBN 149080
MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, CA  92612

TELEPHONE NO: 949-252-9990  FAX NO: 949-252-9991
ATTORNEY FOR *(Name)*: JANE PCNE DOE and JOHN PCNM DOE

**FILED**
Superior Court Of California
County Of Los Angeles

JUN 3 0 2017

~~R.~~ ~~Executive Officer~~
~~Clerk~~

**BY FAX**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA  90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
JANE PCNE DOE, et al. v. USA GYMNASTICS, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited  ☐ Limited | ☐ Counter  ☐ Joinder | BC 6 6 7 0 5 3 |
| (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify)*:  6
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 30, 2017

JOHN C. MANLY
_____
(TYPE OR PRINT NAME)

*John C. Manly*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

# Original

**BY FAX**

| SHORT TITLE: JANE PCNE DOE, et al. v. USA GYMNASTICS, et al. | CASE NUMBER |
|---|---|

### CIVIL CASE COVER SHEET ADDENDUM AND
### STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ✓YES    CLASS ACTION? YES  LIMITED CASE? YES  TIME ESTIMATED FOR TRIAL 20_____ HOURS/✓DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.3.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office
11. Mandatory Filing Location (Hub Case)

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons. See Step 3<br>Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☑ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: JANE PCNE DOE, et al. v. USA GYMNASTICS, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2, 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2, 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: JANE PCNE DOE, et al. v. USA GYMNASTICS, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C. Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| **Miscellaneous Civil Petitions** | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: JANE PCNE DOE, et al. v. USA GYMNASTICS, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>□ 1. □ 2. □ 3. □ 4. ☑ 5. □ 6. □ 7. □ 8. □ 9. □ 10. □ 11. | ADDRESS: |
|---|---|
| **CITY:** Long Beach | **STATE:** CA    **ZIP CODE:** 90815 |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.3, subd.(a):

Dated: June 30, 2017

*John C. Manly*

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/15).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**