ALLEN L. LANSTRA (SBN 251510)
Allen.Lanstra@skadden.com
KEVIN J. MINNICK (SBN 269620)
Kevin.Minnick@skadden.com
KASONNI M. SCALES (SBN 301871)
Kasonni.Scales@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendant
MICHIGAN STATE UNIVERSITY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANE PCNE DOE, AND JOHN PCNM DOE, | CASE NO.: 2:18-cv-03464-JLS (KESx) |
| Plaintiffs, | DEFENDANT MICHIGAN STATE UNIVERSITY'S: |
| v. | (1) NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION; |
| USA GYMNASTICS, UNITED STATES OLYMPIC COMMITTEE, AND DOES 3 THROUGH 500. | (2) MEMORANDUM OF POINTS AND AUTHORITIES; |
| Defendants. | (3) DECLARATION OF AMY VAN GELDER (filed under separate cover); and |
| | (4) [PROPOSED] ORDER (filed under separate cover). |
| | The Honorable Josephine L. Staton |
| | Date:        November 2, 2018<br>Time:        2:30 p.m.<br>Courtroom:  10A |

NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Michigan State University ("MSU") will and hereby does move this Court for an order determining its settlement with Plaintiffs Jane PCNE Doe and John PCNM Doe ("Plaintiffs") to be in good faith within the meaning of California Code of Civil Procedure sections 877 and 877.6. The motion will be made in the Courtroom of the Honorable Josephine L. Staton, located at 411 West Fourth Street, Santa Ana, California, Courtroom 10A. The motion will be heard on November 2, 2018 at 2:30 p.m.

MSU makes this motion on the grounds that the settlement between MSU and Plaintiffs is a reasonable, good faith settlement sufficient to bar claims for indemnity and contribution by joint tortfeasors against MSU pursuant to California Code of Civil Procedure sections 877 and 877.6(c). The settlement satisfies the applicable factors set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499 (1985). Specifically, the settlement is reasonable and appropriate given MSU's proportionate potential liability in the matter. *Id*. Moreover, the negotiations between Plaintiffs and MSU did not involve collusion, fraud, or tortious conduct, and the resulting settlement is not aimed at injuring the interests of any non-settling defendant or other person. *Id*.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities and the Declaration of Amy Van Gelder ("Van Gelder Decl.") filed herewith, all other pleadings and papers on file, deemed to be on file, and of which judicial notice may be taken at the time this motion is heard, and all argument presented.

This motion is made following the electronic conference of counsel pursuant to L.R. 7-3, initiated by email dated July 12, 2018, wherein MSU informed the non-settling parties who have appeared in this case and related cases of the settlement and MSU's intention to seek a good faith determination from this Court. Based on the

NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT
DETERMINATION

1    electronic conference of counsel, MSU is informed and believes that no other party

2    intends to oppose this motion.

3

4    DATED: August 31, 2018

5                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

7              By:  _____*/s/ Kevin J. Minnick*_____
                                    Kevin J. Minnick

8                                    Attorneys for Defendant
9                                    MICHIGAN STATE UNIVERSITY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT
DETERMINATION

1

## <u>TABLE OF CONTENTS</u>

2

Page

3  TABLE OF AUTHORITIES ................................................................. ii

4  INTRODUCTION ............................................................................... 1

5  BACKGROUND ................................................................................. 2

6      I.    Case Summary ................................................................ 2

7      II.    Settlement Terms and Participating Parties ........................... 3

8  ARGUMENT ....................................................................................... 4

9      I.    California Code of Civil Procedure Sections 877 and 877.6
10            Permit MSU to Obtain a Judicial Determination of Good Faith Settlement ........................................................................ 4

11      II.    This Court Should Determine That the Settlement Is in Good
12            Faith and Bars Any Indemnity and Contribution Claims .................. 6

13      III.    The Settlement Qualifies as a Good Faith Settlement ........................ 8

14            A.    The Settlement Amount Is Reasonable Considering the Proportionate Liability Between the Defendants ..................... 8

15            B.    The Amount Paid in Settlement Is Reasonable ...................... 10

16            C.    The Method of Allocation of Settlement Proceeds Among
17                 Plaintiffs Is Fair and Agreed to by Plaintiffs .......................... 10

18            D.    The Settlement Amount Reflects the Policy That a Settlor Should Pay Less in Settlement Than If Liability Was
19                 Imposed After Trial ............................................................ 11

20            E.    Insurance and Financial Condition of Settlor ......................... 11

21            F.    The Negotiations Between Plaintiff and MSU Did Not Involve Collusion, Fraud, or Tortious Conduct ...................... 12

22  CONCLUSION ................................................................................... 13

23

24

25

26

27

28

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

# TABLE OF AUTHORITIES

## CASES

Page

*City of Grand Terrace v. Superior Court*,
        192 Cal. App. 3d 1251 (1987) ..............................................................7

*Crescenta Valley Water District v. Exxon Mobil Corp.*,
        No. CV 07-2630-JST (ANx),
        2013 WL 12183662 (C.D. Cal. Mar. 5, 2013) ....................................7

*Davidson v. City of Westminster*,
        32 Cal. 3d 197 (1982) ..........................................................................9

*Dole Food Co. v. Superior Court*,
        242 Cal. App. 4th 894 (2015) .........................................................6, 7

*Dole Food Co. v. Watts*,
        303 F.3d 1104 (9th Cir. 2002) .............................................................9

*Fisher v. Superior Court*,
        103 Cal. App. 3d 434 (1980) ...............................................................5

*Horton v. Superior Court*,
        194 Cal. App. 3d 727 (1987) .............................................................10

*Lackner v. North*,
        135 Cal. App. 4th 1188 (2006) ............................................................9

*Mason & Dixon Intermodal v. Lapmaster,International LLC*,
        632 F.3d 1056 (9th Cir. 2011) .............................................................4

*North County Contractor's Ass'n, Inc. v. Touchstone Insurance Services*,
        27 Cal. App. 4th 1085 (1994) ..............................................................6

*Roman v. Liberty University, Inc.*,
        162 Cal. App. 4th 670 (2008) ..............................................................8

*Ruvalcaba v. Ocwen Loan Servicing, LLC*,
        No. 15-CV-0744-BAS-DHB,
        2018 WL 571934 (S.D. Cal. Jan. 26, 2018) ....................................4, 5

*Stambaugh v. Superior Court*,
        62 Cal. App. 3d 231 (1976) ..............................................................5, 7

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates*,
        38 Cal. 3d 488 (1985) ...............................................................passim

## STATUTES

36 U.S.C. § 220505(b)(9) ...................................................................2

Cal. Bus. & Prof. Code § 17200 ........................................................2

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

Cal. Civ. Proc. Code § 877 .................................................................passim

Cal. Civ. Proc. Code § 877.6 ..............................................................passim

Cal. Civ. Proc. Code § 877.6(a) .................................................................5

Cal. Civ. Proc. Code § 877.6(c) .................................................................5

Cal. Civ. Proc. Code § 877.6(d)............................................................5, 7

Mich. Comp. Laws Ann. § 691.1401(a) ......................................................9

Mich. Comp. Laws Ann. § 691.1401(g) ......................................................9

Mich. Comp. Laws Ann. § 691.1407...........................................................9

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

## INTRODUCTION

This action was brought by Plaintiffs Jane PCNE Doe and John PCNM Doe ("Plaintiffs" or "Plaintiffs Jane and John Doe") to seek redress for themselves for the alleged sexual assault to their daughter committed by Defendant Lawrence Nassar ("Nassar"), who in the fall of 2016 was unmasked as a fraud, a pedophile, and a criminal.  Nassar publicly admitted that he sexually assaulted his multiple victims, and he will spend the rest of his life behind bars, as he deserves.  While Defendant Michigan State University ("MSU") denies liability for the heinous acts committed by Nassar, MSU is committed to resolving the civil disputes that arose from Nassar's actions.  In May of this year, MSU, Plaintiffs Jane and John Doe, and numerous other plaintiffs engaged in mediation over a multi-month period, including extensive settlement negotiations before the Honorable Layn R. Phillips (Ret.), to resolve the complaints against MSU stemming from Nassar's wrongdoing.

On May 16, 2018, MSU and Plaintiffs Jane and John Doe's attorneys announced that the 333 plaintiffs who participated in the settlement negotiations reached a global settlement in principle to resolve and release all claims against MSU and certain individual defendants connected to MSU.  In exchange for these releases, MSU agreed to pay $500,000,000 to be distributed for the benefit of these and future plaintiffs, including Plaintiffs Jane and John Doe.  Seventy-five million dollars will be placed in reserve for potential future claims and $425,000,000 of the settlement amount will be made immediately available to the 333 participating plaintiffs and allocated to each by the determination of the Honorable William Bettinelli (Ret.) of JAMS.  All participating plaintiffs, including Plaintiffs Jane and John Doe, have agreed to participate in this allocation process.  MSU, Plaintiffs Jane and John Doe, and the settling plaintiffs executed the final Settlement Agreement and Mutual Release on August 28, 2018 (the "Settlement" or "Settlement Agreement"), which is attached to the Declaration of Amy Van Gelder ("Van Gelder Decl.") as Exhibit A.

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1    MSU's payment of a half-billion dollars for the benefit of Plaintiffs Jane and
2    John Doe and the other settling plaintiffs amounts to an average recovery (not
3    including the $75,000,000 reserve fund) just under $1.3 million for each plaintiff.
4    This settlement was meant to fairly and expeditiously resolve Plaintiffs Jane and
5    John Doe's dispute with MSU, without further cost and delay to the parties.  As
6    shown below, the Settlement satisfies each of the applicable factors for good faith
7    settlement determinations articulated in *Tech-Bilt, Inc. v. Woodward-Clyde &*
8    *Associates*, 38 Cal. 3d 488 (1985).  Thus, the Court should find that the Settlement is
9    a good faith settlement under California Code of Civil Procedure sections 877 and
10   877.6 and bar any claims for indemnity or contribution against MSU by alleged joint
11   tortfeasors.

**BACKGROUND**

**I.    Case Summary**

14       On June 30, 2017, Plaintiffs Jane and John Doe filed a complaint in the
15   Superior Court for the State of California for the County of Los Angeles, Case No.
16   BC667053, under the caption *Jane PCNE Doe, an individual, and John PCNM Doe,*
17   *an individual v. USA Gymanstics, a Business Entity of form unknown, United States*
18   *Olympic Committee, a Business Entity of form unknown, and Does 3 through 500.*
19   (ECF No. 1-1, Exhibit 1 (the "Complaint" or "Compl.").)  On April 12, 2018,
20   Plaintiffs Jane and John Doe filed an amendment to the Complaint naming Doe 1 as
21   Michigan State University, a Michigan Entity of Form Unknown.

22       The Complaint asserts claims against United States Olympic Committee
23   ("USOC"), USA Gymnastics ("USAG") and MSU for violations of California
24   Business and Professions Code section 17200, as well as common law claims of
25   intentional infliction of emotional distress, negligent infliction of emotional distress,
26   negligence, breach of fiduciary duty, and constructive fraud.  (Compl. ¶ 55-117.)

27       On April 25, 2018, USOC removed the action to the Central District of
28   California, Western Division, pursuant to 36 U.S.C. § 220505(b)(9).  (ECF No. 1.)

2

1 Thereafter, on May 1, 2018, MSU filed a joint stipulation with Plaintiffs Jane and
2 John Doe to extend the date to answer or otherwise respond to the Complaint to July
3 20, 2018, which was granted on May 2, 2018.   (ECF Nos. 12, 13.)   On
4 May 15, 2018, this action was transferred to this Court as a related case to *Lopez v.*
5 *Michigan State, et al.*, Case No. 8:18-cv-00650 JLS(KESx).  (ECF No. 19.)  On May
6 16, 2018, MSU and Plaintiffs Jane and John Doe's counsel announced that they had
7 reached a global settlement in principle.  On July 17, 2018, MSU filed a second joint
8 stipulation to extend the date to answer or otherwise respond to the Complaint to
9 October 18, 2018 (ECF No. 25), which the Court granted on July 20, 2018 (ECF No.
10 27).  On August 28, 2018, the parties executed a final settlement agreement.

11 **II.    Settlement Terms and Participating Parties**

12      The Settlement is contingent upon the Court determining that it is a good faith
13 settlement and barring other parties from bringing any claims against MSU for any
14 form of contribution or indemnity, as set forth in the concurrently filed Proposed
15 Order.  (*See* Van Gelder Decl., Exhibit A, Settlement Agreement ¶ 3(a)(ii).)

16      Plaintiffs Jane and John Doe and the other settling plaintiffs agree to release
17 all claims against MSU and the "MSU Released Persons" (as defined in the
18 Settlement Agreement ¶ 8(a)) related to any alleged sexual assault or similar conduct
19 by Nassar.  MSU agrees to pay $500,000,000 (the "Settlement Amount").  (*Id.*
20 ¶ 6(a).)   MSU will deposit $425,000,000 into a qualified settlement fund for
21 distribution to the 333 settling plaintiffs.  (*Id.* ¶ 6(a)(i).)

22      The $425,000,000 will be allocated to the settling plaintiffs through a binding
23 process to determine each plaintiff's share of the Settlement (the "Allocation
24 Process").  (*Id.* ¶ 4(c).)  The Allocation Process will be devised and presided over by
25 the Honorable Judge William Bettinelli (Ret.) of JAMS, whose fees and costs will be
26 paid exclusively from the qualified settlement fund.   (*Id.*)  Plaintiffs, amongst
27 themselves, have agreed that Judge Bettinelli will determine each individual
28 plaintiff's entitlement to a portion of the qualified settlement fund (the "Allocated

3

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

Share"). (*Id.*)  Following applicable law, Judge Bettinelli shall determine, in his sole discretion, the Allocated Share of the settlement fund to which each plaintiff is entitled. (*Id.*)  The Allocation Process will also include an appeal procedure through which any plaintiff may contest, if desired, his or her Allocated Share, through notice and an opportunity to be heard. (*Id.*)  MSU shall have no right to participate, in any manner, in the Allocation Process, but shall be informed of the amount of each plaintiff's Allocated Share once finally determined. (*Id.*)

MSU will also deposit $75,000,000 into an interest-bearing account controlled by MSU for the purpose of settling future claims related to Nassar ("Litigation Reserve Amount"). (Settlement Agreement ¶ 6(a)(ii).)  Within 30 days of the two-year anniversary of payment of the Settlement Amount, all remaining portions of the Litigation Reserve Amount not designated by an auditor as necessary to resolve then-pending Nassar-related claims and not needed to pay outstanding fees and costs of the auditor, defense counsel, or consultants, if any, shall be deposited by MSU into the qualified settlement fund for distribution through the Allocation Process. (*Id.* ¶ 6(b)(iv).)

Those participating in the Settlement are Plaintiffs Jane and John Doe (who are considered one plaintiff for purposes of the Settlement), the 332 remaining plaintiffs in the other actions, MSU, and certain individual defendants related to MSU (*see id.* ¶ 2(q)) who were named in complaints filed by other plaintiffs but who are not parties to this case. (*Id.* ¶ 2(v).)

## **ARGUMENT**

### **I.**   **California Code of Civil Procedure Sections 877 and 877.6 Permit MSU to Obtain a Judicial Determination of Good Faith Settlement**

It is appropriate for this Court to apply California law in making the good faith determination requested here. *See Mason & Dixon Intermodal v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011); *see also Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-0744-BAS-DHB, 2018 WL 571934, at *2-3 (S.D. Cal.

1  Jan. 26, 2018) (applying California Code of Civil Procedure sections 877 and 877.6
2  in determining good faith settlement in federal action).

3      California Code of Civil Procedure section 877.6(a) provides that "[a]ny party
4  to an action in which it is alleged that two or more parties are joint tortfeasors . . .
5  shall be entitled to a hearing on the issue of the good faith of a settlement entered
6  into by the plaintiff or other claimant and one or more alleged tortfeasors." Cal. Civ.
7  Proc. Code § 877.6(a). California Code of Civil Procedure section 877 provides that:

> Where a release, dismissal, with or without prejudice, or a covenant not
> to sue or not to enforce judgment is given in good faith before verdict or
> judgment to one or more of a number of tortfeasors claimed to be liable
> for the same tort . . . . It shall discharge the party to whom it is given
> from all liability for any contribution to any other parties.

12  *Id*. § 877; *see also* Cal. Civ. Proc. Code § 877.6(c) (good faith determination bars
13  other joint tortfeasors from asserting claims "for equitable comparative contribution,
14  or partial or comparative indemnity, based on comparative negligence or
15  comparative fault.").

16      The legislative intent underlying section 877 was to extinguish all claims
17  against the settling defendant, including those by the claimant and any alleged joint
18  tortfeasors in order to encourage finality. *See Stambaugh v. Superior Court*, 62 Cal.
19  App. 3d 231, 235 (1976). Thus, section 877 embodies the strong public policy
20  encouraging settlement of litigation. *See Fisher v. Superior Court*, 103 Cal. App. 3d
21  434, 442-43 (1980). In light of these policy concerns, it is a challenger's burden to
22  demonstrate a lack of good faith. Cal. Civ. Proc. Code § 877.6(d).

23      Here, MSU and Plaintiffs Jane and John Doe have agreed to settle this action
24  to avoid any further costs or delay of continued litigation. In keeping with the policy
25  goals of section 877, this Court should approve the parties' good faith settlement to
26  terminate this litigation and bar any claims for contribution and indemnity against
27  MSU.

28

## II.   This Court Should Determine That the Settlement Is in Good Faith and Bars Any Indemnity and Contribution Claims

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* states the standard for determining whether a settlement is made in good faith.  38 Cal. 3d 488 (1985).  In *Tech-Bilt*, the California Supreme Court identified certain factors that are relevant to the determination of a good faith settlement: (1) a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; (4) recognition that a settlor should pay less in settlement than if the settlor were found liable after a trial; (5) the financial condition and the insurance policy limits of the settlor; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  *See id.* at 499.

"A judge charting the boundaries of good faith of necessity must avoid a rigid application of the factors set forth in *Tech-Bilt*."  *N. Cty. Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1090 (1994).  The key consideration is whether the settlement is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be."  *Tech-Bilt, Inc.*, 38 Cal. 3d at 499 (citation omitted).  The court "has wide discretion in deciding whether a settlement is in good faith and in arriving at an allocation of valuation of the various interests involved."  *N. Cty. Contractor's Ass'n, Inc.*, 27 Cal. App. 4th at 1095 (citation omitted).

Moreover, courts have approved of global settlements requiring a future allocation of settlement funds amongst multiple plaintiffs and determined them to be good faith settlements under section 877.6.  *See Dole Food Co. v. Superior Court*, 242 Cal. App. 4th 894, 898-99 (2015) (approving global settlement fund as a good faith settlement and noting that such a determination "did not require an allocation of the $90 million settlement consideration among the 1,491 individual Plaintiffs and between their economic and noneconomic damages" as "[s]uch individualized

6

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1  allocations, which would have necessitated 1,491 mini-trials in this matter, are not
2  required as part of the good faith settlement process").

3      A person challenging the good faith of this Settlement bears the burden of
4  proving that the Settlement is not in good faith.  *See Tech-Bilt*, 38 Cal. 3d at 499-
5  500; *see also* Cal. Civ. Proc. Code § 877.6(d).  Lack of good faith is not, however,
6  "established by showing that a settling defendant paid less than his theoretical
7  proportionate or fair share," as "[s]uch a rule would unduly discourage settlements."
8  38 Cal. 3d at 499 (citation omitted).  The *Tech-Bilt* court also recognized that a good
9  faith settlement determination must take into consideration the speculative and
10 unpredictable nature of litigation and should not be determined solely by the
11 proportion the settlement bears or may bear to the damages or alleged damages
12 claimed by the plaintiff.  *See id*. (citation omitted).  In *Stambaugh*, which the
13 California Supreme Court cited in *Tech-Bilt*, 38 Cal. 3d at 499, the court
14 acknowledged the policy in favor of settling litigation and specifically noted that:

15      [e]xcept in rare cases of collusion or bad faith . . . a joint tortfeasor
16      should be permitted to negotiate settlement of an adverse claim
        according to his own best interests, whether for his financial advantage,
17      or for the purchase of peace and quiet, or otherwise.  His good faith will
18      not be determined by the proportion his settlement bears to the damages
        of the claimant. For the damages are often speculative, and the
19      probability of legal liability therefor is often uncertain or remote.

20 62 Cal. App. 3d at 238  (citations omitted).

21      Lastly, "only when the good faith nature of a settlement is disputed, is it
22 incumbent upon the trial court to consider and weigh the *Tech-Bilt* factors."
23 *Crescenta Valley Water Dist. v. Exxon Mobil Corp.*, No. CV 07-2630-JST (ANx),
24 2013 WL 12183662, at *1 (C.D. Cal. Mar. 5, 2013) (Staton, J.) (quoting *City of*
25 *Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1261 (1987)) (internal
26 alterations omitted).  "In other words, 'when no one objects, the barebones motion
27 which sets forth the ground of good faith, accompanied by a declaration which [sic]
28 sets forth a brief background of the case is sufficient.'"  *Id*.  (alteration in original).

7

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1    Because no party has stated any intent to oppose this Motion or dispute the

2    good faith of the Settlement, the Court can, and should, grant this Motion.  However,

3    even if further analysis were required, the application of the *Tech-Bilt* factors shows

4    that Plaintiffs Jane and John Doe's settlement with MSU is a reasonable settlement

5    made in good faith between the settling parties.

6    **III.    The Settlement Qualifies as a Good Faith Settlement**

7    **        A.    The Settlement Amount Is Reasonable Considering the
8               Proportionate Liability Between the Defendants**

9    In their Complaint, Plaintiffs Jane and John Doe allege Defendants USAG,

10   USOC, and MSU failed to protect their daughter against Larry Nassar, who allegedly

11   committed sexual assault.  (Compl. ¶ 1.)  Plaintiffs Jane and John Doe's daughter is

12   McKayla Maroney, who brought her own action and identifies Plaintiffs Jane and

13   John Doe as her parents.  *See Maroney v. Michigan State University, et al.*, Case No.

14   2:18-cv-03461-JLS (KESx), ECF No. 1, Ex. 1 ("Maroney Complaint") ¶ 4.

15   At this stage of the litigation, Plaintiffs Jane and John Doe have not yet

16   calculated their alleged damages, and thus, they remain uncertain.  What is certain is

17   that their damages arose from Nassar's alleged misconduct, Nassar has admitted to

18   engaging in similar misconduct, and Nassar is liable for his actions.  Whatever the

19   ultimate recovery Plaintiffs would have obtained after a trial, any liability

20   attributable to MSU pales in comparison to the liability of non-party Nassar.

21   It is not even certain, however, that MSU is liable for Nassar's actions, and if

22   this case had not settled, MSU would argue that it does not share in that liability.

23   MSU, as a Michigan state institution, has several challenges to Plaintiffs' claims,

24   including challenges to the Court's personal jurisdiction over MSU, an out-of-state

25   university.  *See Roman v. Liberty Univ., Inc.*, 162 Cal. App. 4th 670, 677-81 (2008)

26   (affirming trial court's grant of motion to quash for lack of personal jurisdiction over

27   out-of-state university where the only conduct alleged by student-plaintiff to support

28   his jurisdictional claims was the university's recruitment of the student plaintiff); *see*

8

1  *also Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002) ("Because

2  California's long-arm jurisdictional statute is coextensive with federal due process

3  requirements, the jurisdictional analyses under state law and federal due process are

4  the same." (citation omitted)).   Here, Plaintiffs pled no allegations pertaining to

5  MSU's activities in the state of California.  (*See generally* Compl.)  Thus, Plaintiffs

6  risk not being able to establish the Court's personal jurisdiction over MSU.

7       Further, MSU, as a state institution, is generally immune from suit for torts

8  under the doctrine of sovereign immunity.  *See* Mich. Comp. Laws Ann. § 691.1407

9  ("a governmental agency is immune from tort liability if the governmental agency is

10  engaged in the exercise or discharge of a governmental function"); Mich. Comp.

11  Laws Ann. § 691.1401(a), (g) ("'Governmental agency' means this state or a

12  political subdivision . . . . State includes a public university or college of this state,

13  whether established as a constitutional corporation or otherwise.").

14       Moreover, "[a]s a general rule, one owes no duty to control the conduct of

15  another, nor to warn those endangered by such conduct."  *Davidson v. City of*

16  *Westminster*, 32 Cal. 3d 197, 203 (1982).  Plaintiffs Jane and John Doe allege that

17  such a duty existed because of a "special relationship" between them and MSU.

18  (*See, e.g.*, Compl. ¶ 58.)   Their daughter, McKayla Maroney, however, was not

19  affiliated with MSU in any way.  (*See generally* Complaint.)  Plaintiffs Jane and

20  John Doe do not allege that their daughter ever received treatment by Nassar on

21  MSU's campus, but alleges that the abuse took place at events where Defendants

22  USAG and USOC were responsible to supervise their daughter and provide for her

23  safety.  (*Id.* ¶ 5.)  Thus, Plaintiffs Jane and John Doe would have difficulty proving

24  that MSU owed them or their daughter a duty required to impose tort liability.  *See*

25  *Lackner v. North*, 135 Cal. App. 4th 1188, 1206–07 (2006) ("a school district's duty

26  to supervise its students does not extend to protect a non-student from injuries caused

27  by a student off-campus").

28

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1    In short, Plaintiffs would face considerable challenges to their claims against

2  MSU.    Plaintiffs' participation in a $500,000,000 settlement, with an average

3  recovery of nearly $1.3 million, is fair and could not be said to be "so far 'out of the

4  ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with the equitable

5  objectives of [Code of Civil Procedure § 877.6]."   *Tech-Bilt*, 38 Cal. 3d at 499-500;

6  *see Horton v. Superior Court*, 194 Cal. App. 3d 727, 735-36 (1987) (affirming good

7  faith settlement determination because $50,000 was not "out of the ballpark" where

8  the court estimated that the case was worth less than $150,000 and observing that a

9  party should pay less in settlement).   Thus, this factor weighs in favor of finding that

10  the Settlement was made in good faith.

11        **B.**     **The Amount Paid in Settlement Is Reasonable**

12    Given the uncertainty of Plaintiffs' ultimate damages figure and the challenges

13  they would face in successfully asserting their claims against MSU, the amount paid

14  by MSU in settlement is reasonable.   The $425,000,000 that will be made

15  immediately available to the 333 plaintiffs creates an average recovery of

16  $1,276,276.28.   This average settlement recovery is substantial, and Plaintiffs'

17  willingness to accept the binding process for determining each amount is strong

18  evidence that the global settlement sum is reasonable.

19        **C.**     **The Method of Allocation of Settlement Proceeds Among Plaintiffs**
20                   **Is Fair and Agreed to by Plaintiffs**

21    As discussed above, the Settlement provides a fair procedure for allocating the

22  settlement proceeds among the plaintiffs.   Plaintiffs agreed to participate in a binding

23  process to be devised and presided over by a highly regarded JAMS settlement

24  judge, the Honorable William Bettinelli (Ret.), who will determine each plaintiff's

25  Allocated Share of the settlement fund.   Moreover, the Allocation Process will

26  include a procedure through which Plaintiffs may contest, if desired, their Allocated

27  Share, through notice and an opportunity to be heard.   MSU Defendants shall not

28  participate in that process.   This allocation method, agreed to by Plaintiffs, is a fair

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

and just method of expeditiously providing settlement funds to the plaintiffs. By appointing the Hon. William Bettinelli to oversee the allocation of the funds, with a procedural mechanism for appealing any decisions, Plaintiffs are ensured a much faster allocation of funds than could be obtained through litigation that is subject to appellate review.

**D.    The Settlement Amount Reflects the Policy That a Settlor Should Pay Less in Settlement Than If Liability Was Imposed After Trial**

A settling defendant should pay less in settlement than if the case went to trial and liability was imposed because settlement avoids the costs of discovery and other litigation expenses. *See Tech-Bilt*, 38 Cal. 3d at 499. The Settlement occurred at an early stage in Plaintiffs' prosecution of the action, and therefore, they have avoided substantial costs and expenses of litigation, especially given the challenges Plaintiffs would have faced in their claims against MSU. The global settlement fund of $500,000,000 and the fair and speedy method of allocation for Plaintiffs are a more than reasonable way to resolve this action at this early stage.

**E.    Insurance and Financial Condition of Settlor**

The $500 million settlement amount is a significant sum. By way of comparison, this figure equals approximately 37% of MSU's total general fund for budgeted expenditures for 2017-2018 ($1,362,100,000).[1] Further, although MSU has insurance policies, and believes Plaintiffs' claims to be covered, MSU's insurance carriers dispute coverage of the claims resolved by the Settlement and have not yet contributed to the payment. (Van Gelder Decl., ¶ 5.) Thus, in light of the magnitude of the Settlement, especially considering MSU's status as a public university, and the fact that MSU has executed the Settlement without participation

---

[1]    *See* Michigan State University 2017-2018 Budgets, at ii-iii, available at https://opb.msu.edu/functions/budget/documents/2017-18Budgets.pdf.

11
MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1  by its insurers, this factor weighs in favor of finding the Settlement to be in good

2  faith.

3        **F.**    **<u>The Negotiations Between Plaintiff and MSU Did Not Involve</u>**

            **<u>Collusion, Fraud, or Tortious Conduct</u>**

4

5        Under California law, the court also considers the "existence of collusion,

6  fraud, or tortious conduct" in connection with the settlement agreement and/or

7  whether the settlement agreement was "aimed to injure the interests of nonsettling

8  defendants." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499 (citation omitted). Here, the

9  settlement negotiations were conducted at arm's length. (Van Gelder Decl., ¶ 3.)

10 The settling parties achieved no tactical advantages, but merely aimed to resolve

11 Plaintiffs' claims against MSU. (*Id*.) Further, the Settlement is not aimed at injuring

12 the interests of any non-settling defendant or other person, but is merely the result of

13 the settling parties' wish to resolve their claims in an expedient and fair manner.

14 (Van Gelder Decl., ¶ 4.)

15                          *    *    *

16       The Court should thus find that the Settlement was negotiated in good faith

17 when considered under the *Tech-Bilt* factors.

18 //

19 //

20 //

21

22

23

24

25

26

27

28

12

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

## <u>CONCLUSION</u>

MSU and Plaintiffs Jane and John Doe wish to bring a final resolution to all of Plaintiffs' claims against MSU stemming from Nassar's alleged wrongdoing.  In order to achieve this, and for the reasons set forth herein, MSU respectfully requests that the Court find the settlement to be a "good faith settlement" as provided in California Code of Civil Procedure sections 877 and 877.6, thereby barring and enjoining other persons or entities from bringing any claims against MSU for any form of contribution or indemnity, as set forth in the concurrently filed Proposed Order.


DATED: August 31, 2018

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Kevin J. Minnick*_____
                        Kevin J. Minnick

Attorneys for Defendant
MICHIGAN STATE UNIVERSITY

13
MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION